Filed 7/22/24  In re F.S. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re F.S. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B333553 (Super. Ct. Nos. 22JV00330, 22JV00331, 22JV00332, 22JV00333, 22JV00334, 22JV00335) (Santa Barbara County) |
| SANTA BARBARA COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent, v. E.M. et al., Defendants and Appellants. | |

E.M. (mother) and R.F. (father) appeal the juvenile court's order terminating parental rights as to Y.S., one of their six

children.  (Welf. & Inst. Code[1], § 366.26.)  Mother contends reversal is necessary because the juvenile court erred when it found inapplicable both the parental-benefit and sibling relationship exceptions to adoption.  Father restricts his focus to the sibling relationship exception but joins in mother's arguments.  We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In October 2022, Santa Barbara County Child Welfare Services (CWS) obtained protective custody warrants for Y.S., age 1, and her five older siblings.  CWS filed a section 300 petition alleging unsanitary and unsafe living conditions, as well as a prior instance of domestic violence by father.  On October 20, 2022 CWS detained all six children.

Pairs of the six siblings were placed in three confidential resource homes.  Y.S. and her sister F.S., age 8, were paired.  At the October 2022 detention hearing, the court ordered continued detention.  At the November 2022 jurisdiction hearing, the court found the allegations in an amended petition true by a preponderance of the evidence.  In a December 2022 disposition hearing, the court ordered family reunification services, including at least four hours of supervised visits each week.  At a contested six-month review hearing in June 2023, the court terminated reunification services as to both parents.

In November 2023, the court held a contested section 366.26 hearing at which social worker Adrian Rodriguez, mother, and father testified.  Based on his review of notes on the visits between mother and Y.S., Rodriguez testified these visits regularly occurred.  Y.S. ran to mother and stretched her arms

---

[1] All statutory references are to the Welfare and Institutions Code.

out for a hug.  Y.S. cried when mother put her down so she could attend to the other children.  After the visits, the resource parents reported Y.S. had nightmares and soiled herself in bed.  Rodriguez testified Y.S. had a substantial and positive attachment to mother.  He could not determine whether an emotional attachment existed.

Rodriguez stated Y.S. has a close relationship with her resource parents.  She would extend her arms toward her resource mother and father.  When Rodriguez first met Y.S., she would hide behind her resource mother's leg and ask to be picked up.  Rodriguez observed Y.S. laugh and play with resource father during home visits.  Y.S. appeared to be happy in the resource home.  According to resource mother, Y.S. would sometimes cry and make gestures indicating she wanted to stay when leaving for visits with mother and father.  A Court Appointed Special Advocate report indicated Y.S. called her resource parents "Mom" and "Dad."

F.S. indicated she enjoyed living with, playing with, and having Y.S. as a sister.  Rodriguez observed F.S. carrying Y.S., as well as Y.S.'s laughter at F.S.'s joking facial expressions.  They appeared to have a close relationship.  Rodriguez believed a bond existed between the siblings, including Y.S. and F.S.  He also believed remaining in a home with F.S. was in Y.S.'s best interest.  A CWS report stated:  "Although all the children live in separate placements, it is in the best interest that the children maintain their sibling relationships because they enjoy seeing one another . . . ."

The resource parents were committed to legal guardianship of F.S., but the process could take three to five years for immigration status reasons.  The resource parents were also

willing to discuss adoption for F.S. once she obtained special immigrant juvenile status.

Mother testified Y.S. has a strong bond with mother. Y.S. never wants to go home and wants to stay with mother. Y.S. wants mother to hold her constantly.

Father testified he provides food and soda during visits and changes Y.S.'s diaper. Y.S. calls him "Poppy" and says she loves him. Y.S. dances with father, and she would sleep on his shoulder when the two still lived together.

The juvenile court found the parental-benefit exception inapplicable as to both parents. The court concluded both parents satisfied the visitation prong. The court found neither parent established a substantial, positive, emotional attachment to Y.S. The court noted Y.S. was removed one year and one month ago and concluded she had spent "a little over one half of her life outside of her parents' care." The court stated Y.S. is a lively, happy child who reaches her arms out to not only mother but also her siblings and resource parents. The court concluded the benefits of adoption "clearly outweigh[ed] any detriment that might exist."

Regarding the sibling relationship exception, the court concluded that while F.S. and Y.S. shared a bond, it could not find a substantial sibling relationship between them. The court noted the adoptive parents were willing to keep F.S. in guardianship and indicated any inference of separation from Y.S. would be speculative. However, the court concluded that even if F.S.'s guardianship ended, the benefits of adoption outweighed maintenance of that sibling relationship. The court terminated parental rights as to both parents.

4

DISCUSSION

*Parental-Benefit Exception*

Mother asserts the court erred in finding the parental-benefit exception inapplicable.  We disagree.

"""At a permanency plan hearing, the [juvenile] court may order one of three alternatives:  adoption, guardianship or long-term foster care.  [Citation.]  If the dependent child is adoptable, there is a strong preference for adoption over the alternative permanency plans."  [Citation.]'" (*In re Katherine J.* (2022) 75 Cal.App.5th 303, 316, quoting *In re B.D.* (2021) 66 Cal.App.5th 1218, 1224.)  If the juvenile court finds the child adoptable, it must terminate parental rights unless one of several statutory exceptions applies.  (§ 366.26, subd. (c)(1)(B).)

The parental-benefit exception allows the court to consider a plan other than adoption if it "finds a compelling reason for determining that termination would be detrimental to the child" because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."  (§ 366.26, subd. (c)(1)(B)(i).)

A parent invoking the exception has the burden of proof and must establish three elements by a preponderance of the evidence:  (1) "regular visitation and contact" between the parent and child; (2) "a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship"; and (3) "terminating that attachment would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home."  (*In re Caden C.* (2021) 11 Cal.5th 614, 636 (*Caden C.*).)  The inquiry's focus is the child's best interests.  (*Id.* at p. 632.)

5

We review the first two elements for substantial evidence because they are essentially factual determinations. (*Caden C.*, *supra*, 11 Cal.5th at pp. 639-640.) We likewise review for substantial evidence any factual determinations underpinning the third element. (*Id.* at p. 640.) "In reviewing factual determinations for substantial evidence, a reviewing court should 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.'" (*Ibid.*)

The third element's "ultimate decision—whether termination of parental rights would be detrimental to the child due to the child's relationship with his parent—is discretionary and properly reviewed for abuse of discretion." (*Caden C.*, *supra*, 11 Cal.5th at p. 640.) A court abuses its discretion only when "'"'the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.'"'" (*Id.* at p. 641.)

Substantial evidence supports the juvenile court's finding that mother did not share a substantial, positive, emotional attachment with Y.S. Y.S. was just over two-and-a-half years old at the hearing. Y.S. had spent over a year in the care of resource parents, over 40 percent of her young life. (See *In re Autumn H.* (1994) 27 Cal.App.4th 567, 576.) The juvenile court's slight overestimation of this percentage does not appreciably diminish its import. Although Rodriguez believed Y.S. had a substantial and positive attachment to mother, he could not determine if an emotional attachment existed. Moreover, while Y.S. displayed positive behavior with mother, Y.S. experienced nightmares and soiled herself in bed after visits. Given this mixed factual picture, substantial evidence supports the court's finding.

6

Nor did the juvenile court abuse its discretion in concluding that severing the relationship would not be detrimental when balanced against the benefits of the adoptive home. Rodriguez testified to Y.S.'s close relationship with her resource parents. She would extend her arms to both resource parents. Rodriguez observed Y.S. play with her resource father and ask to be picked up by her resource mother. Y.S. called her resource parents "Mom" and "Dad." She appeared to be happy in the resource home. Considering the equivocal impact of Y.S.'s contact with mother, the court did not act irrationally in finding the benefit of a stable, adoptive home outweighed the detriment of severing that parental relationship.

*Sibling Relationship Exception*

Mother and father argue the court erroneously found the sibling relationship exception inapplicable. We disagree.

An exception to termination of parental rights exists when "[t]here would be substantial interference with a child's sibling relationship . . . ." (§ 366.26, subd. (c)(1)(B)(v).) To make this determination, courts consider "the nature and extent of the relationship, including, but not limited to, [1] whether the child was raised with a sibling in the same home, [2] whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and [3] whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (*Ibid.*)

"If the court determines terminating parental rights would substantially interfere with the sibling relationship, the court is then directed to weigh the child's best interest in continuing that sibling relationship against the benefit the child would receive by

7

the permanency of adoption." (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 952.) "[W]e apply the substantial evidence standard to the juvenile court's underlying factual determinations, and the abuse of discretion standard to the court's weighing of competing interests." (*In re D.O.* (2016) 247 Cal.App.4th 166, 174.)

Even assuming substantial interference with Y.S.'s sibling relationships, no abuse of discretion occurred. Y.S.'s closest sibling relationship is with F.S., with whom she has lived all her young life. Rodriguez testified to their sibling bond, and the court recognized it was "clear" they shared a bond. However, we cannot say the court acted irrationally in finding the benefits of adoption by the resource parents—with whom Y.S. had also bonded—outweighed the detriment of terminating the sibling bonds, including with F.S. Application of the sibling relationship exception is "rare, particularly when the proceedings concern young children whose needs for a competent, caring and stable parent are paramount." (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 1014.) We are not met with that rare case.

DISPOSITION

The order terminating parental rights is affirmed.

NOT TO BE PUBLISHED.

CODY, J.

We concur:

YEGAN, Acting P. J.          BALTODANO, J.

8

Gustavo E. Lavayen, Judge
Superior Court County of Santa Barbara

_____

Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant E.M. (mother).

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant R.F. (father).

Rachel Van Mullem, County Counsel, Lisa A. Rothstein, Senior Deputy County Counsel, for Plaintiff and Respondent Santa Barbara County Department of Social Services.